IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| IN THE MATTER OF THE SEARCH AND SEIZURE OF | Case No. 3:18-mj-00458-DMS |
|---|---|
| Apple iPhone 8 Plus (ATF Item: 000005) | |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Brian Arnold, being duly sworn, hereby depose and state:

## TRAINING AND EXPERIENCE OF AFFIANT

1. I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so employed since 2015. I have completed the Criminal Investigator Training Program, ATF Special Agent Basic Training, ATF Firearms Interstate Nexus Training, and ATF Undercover Operations Training. During my tenure as a Special Agent with the ATF, I have had the opportunity to serve as the lead case agent on federal criminal cases primarily investigating violent crime to include firearms, explosives, and narcotics offenses. I have also directly participated in additional federal criminal cases in a support capacity. As the lead case agent, and also as a supporting agent, I have been involved in, and routinely engage in, conducting interviews, executing federal and state search warrants, recovering evidence of federal crimes, conducting covert surveillance operations, and conducting arrest operations.

## PURPOSE OF AFFIDAVIT

2. This affidavit is prepared in support of an application under Federal Rule of Criminal Procedure 41 for a warrant to search an Apple brand device, specifically a gray/black-colored Apple iPhone 8 Plus cellular telephone that was seized from Cristabel MEJIA-ZAYAS ("the SUBJECT DEVICE"), more fully described in Attachment A, attached hereto and incorporated by reference herein, for the items set forth in Attachment B, attached hereto and incorporated by reference herein. More specifically, the applied-for warrant would authorize the forensic examination of the SUBJECT DEVICE for the purpose of identifying electronically stored data particularly described in Attachment B. Both Attachment A and Attachment B are hereby incorporated by

AUG 3 1 2018

reference herein.

3. The cell phone (the SUBJECT DEVICE) seized is suspected to contain evidence, instrumentalities, and fruits of violations of Title 21 U.S.C. § 841(a)(1), (b)(1)(B), Possession with Intent to Distribute Controlled Substances, specifically 100 grams or more of heroin.

4. I have participated in the investigation of the offenses set forth below. The facts and information contained in this affidavit are based upon my personal knowledge, information obtained from my observations, information obtained from other federal, state and local law enforcement officers, and information obtained from interviews. There may be instances where investigators received information from sources of information. This information is denoted as such in this affidavit and to the extent possible, has been corroborated through law enforcement or other secondary reliable sources. All observations referenced in this affidavit that were not made by me were related to me by the person who made such observations. Unless specifically indicated, all conversations and statements described in this affidavit are related in substance and in part only and are not intended to be a verbatim recitation of such statements.

## PROBABLE CAUSE

### Vehicle Stop

5. On July 26, 2018, ATF was conducting an investigation using a source of information that had cellular telephone contact with Christabel Lee MEJIA-ZAYAS to meet up for a drug transaction. The investigation led to the stop of a 2007 gold Chevrolet Equinox AK Plate: JHF496. MEJIA-ZAYAS was the operator and sole occupant of the vehicle, which was in the vicinity of Fred Meyers in midtown Anchorage. At that time, investigators took MEJIA-ZAYAS into custody. When taking her into custody, investigators observed that MEJIA-ZAYAS was wearing a fanny pack. Investigators removed the fanny pack from her waist, noticed a strong odor of vinegar coming from it, and seized it.

### ATF Interview of MEJIA-ZAYAS

6. On July 26, 2018, following MEJIA-ZAYAS being taken into custody, DEA SA Maria Olsen, FBI TFO Alan Skaggs, and I interviewed MEJIA-ZAYAS. Prior to any questioning of MEJIA-ZAYAS, I verbally advised her of her Miranda rights. When asked if she understood her rights she said yes and she agreed to speak with investigators without a lawyer being present. During the interview, MEJIA-ZAYAS made statements in substance and in part including that:
   a. She admitted that she knew there was heroin in the fanny pack.

Page 2 of 11

AUG 3 1 2018

Case 3:18-mj-00458-DMS   Document 1-1   Filed 08/31/18   Page 2 of 11

b. She provided consent to search both the fanny pack and her vehicle.
   c. She refused to consent to the search of her cellular phone.
   d. She admitted she intended to deliver the heroin to another person.

7. Following MEJIA-ZAYAS' consent to search her fanny pack, investigators recovered approximately 510 grams of heroin. I conducted a field test of the recovered substance and received a presumptive positive for the presence of heroin.

8. Following the interview, MEJIAS-ZAYAS was transported and booked into Anchorage Jail and investigators seized her cell phone ("the SUBJECT DEVICE") pursuant to a federal search warrant.

## SOURCES OF INFORMATION

*The Source of Information*
9. In July 2018, ATF met with the source of information and he/she provided investigators with information concerning violations of narcotic laws. The source is the subject of a current investigation concerning violations of federal narcotic laws. The source is cooperating with law enforcement in an effort to reduce his/her exposure to federal prosecution and has not been paid by ATF. The source's criminal history includes the following prior felony convictions: three controlled substances convictions and possession of a weapon. It also includes misdemeanor convictions for malicious destruction of property, destroy/disconnect communications, violation of conditions of release, three driving with license revoked/suspended/limited, operating a vehicle without insurance, and felon in possession of a firearm. The source was on supervised release. The information the source provided has shown to be credible and reliable.

## THE SUBJECT DEVICE

10. My observations and research have led me to believe that MEJIA-ZAYAS' cell phone is an Apple iPhone 8 Plus ("the SUBJECT DEVICE"). As explained below, searches of digital evidence by law enforcement even for months after their seizure does not compromise the likelihood that a search of those devices will yield evidence of the crimes detailed above.

11. I am familiar with smartphones including those like the Apple iPhone 8 Plus cellular telephone described above and more fully in Attachment A. In addition to call logs, voicemail, and text messages, I know that those phones can contain historical GPS locational information regarding where the phone was located at a particular time and date, can store photos and videos, and can email or text individuals from their smartphone. There are also numerous apps available to smart phone like the SUBJECT

AUG 3 1 2018

DEVICE that can be used to communicate with other individuals electronically, including through email, SMS, chat applications, and social media. In addition, these facets of smartphones like the Apple iPhone 8 Plus smart phone can be helpful in determining who was using the phone at a particular moment in time. I also know from my training and experience that these types of electronically stored data can provide evidence, or otherwise further investigations of, violations of Title 21 U.S.C. § 841(a)(1), (b)(1)(B), and can also assist with identifying additional individuals involved in those crimes.

12. Based on the facts detailed herein, and that the SUBJECT DEVICE was in MEJIA-ZAYAS' possession at the time ATF arrested her on July 26, 2018, it is likely that she was using the SUBJECT DEVICE before, during, and/or after the offenses. Moreover, as explained above, there is probable cause to believe that the SUBJECT DEVICE contains evidence of violations of Title 21 U.S.C. § 841(a)(1), (b)(1)(B).

## CELLULAR TELEPHONE / FORENSIC ANALYSIS TECHNICAL TERMS

13. I believe that the SUBJECT DEVICE may contain evidence that shows violations of Title 21 U.S.C. § 841(a)(1), (b)(1)(B) or tends to show that a particular person or persons has/have committed violations of these statutes, and I therefore request authority to search the SUBJECT DEVICE for the following property and evidence:
    a. Data that may identify the owner or user of the above-described cellular communication device(s);

    b. Address books and calendars;

    c. Audio and video clips related to the above-described criminal activity and further described in this affidavit in support of the search warrant, for the above-described item(s);

    d. Call histories and call logs related to the above-described criminal activity and further described in this affidavit in support of the search warrant, for the above-described item(s);

    e. Photographs and associated metadata related to the above-described criminal activity and further described in this affidavit in support of the search warrant, for the above-described item(s);

    f. Text messages (SMS), multimedia messages (MMS), recorded messages and subscriber information modules [SIM cards] between MEJIA-ZAYAS, and other co-conspirators involved in the above described criminal activity

and further described in this affidavit in support of the search warrant, for the above described item(s);

g. Stored voicemail on the device;

h. E-mail messages and attachments, whether read or unread and related to the above-described criminal activity and further described in this affidavit in support of the search warrant, for the above-described item(s);

i. Internet World Wide Web (WWW) browser files including, but not limited to, browser history, browser cache, stored cookies; browser favorites, auto-complete form history and stored passwords;

j. Global position system (GPS) data including, but not limited to coordinates, way points and tracks; and

k. Documents and other text based files related to the above-described criminal activity and further described in this affidavit in support of the search warrant, for the above-described item(s).

14. The executing special agents may enlist the aid of a law enforcement computer forensic laboratory in the searching, viewing, photographing, recording, copying, forensic imagining and analysis.

## **DEFINITIONS**

15. Metadata is generally defined as data about data. It is stored within the data file itself, but is not normally seen when viewing the file. Metadata includes Exchangeable Image File Format (EXIF), which is a specification for image file formats used by digital camera and includes specific information about the photograph.

16. Short Message Service (SMS) is the text communication service that allows the exchange of short text messages between mobile phone devices.

17. Flash memory devices are data storage devices that use solid-state memory to store data. They are generally small in size (in some cases smaller than a fingernail) and designed to be easily removed and transported. They are typically powered by the electronic components they serve. Modern flash memory devices are capable of storing large amounts of information, such as hundreds of images or thousands of pages of text. Multimedia Message Service (MMS) is a communication service that allows the exchange of messages that include multimedia content to and from mobile phones. Subscriber Identity Modules,

AUG 3 1 2018

Case 3:18-mj-00458-DMS Document 1-1 Filed 08/31/18 Page 5 of 11

sometimes referred to as SIM cards, are portable memory chips often used in notebook computers and some models of mobile phones. SIM cards securely store the service-subscriber key used to identify subscribers. The SIM card allows users to change phones by simply removing the SIM card from one mobile phone and inserting it into another mobile phone or broadband telephony device. SIM cards store information used to authenticate and identify subscribers, including but not limited to the Service Provider Name, Service Dialing Numbers and Value Added Service applications. They can also be used to store personal address books and SMS data.

18. The Global Positioning System (GPS) is a satellite-based navigation system, which provides location and time information.

## ELECTRONIC COMMUNICATION DEVICES, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

19. I know from my training and experience that modern cellular communication devices like the SUBJECT DEVICE very often possess data processing and data storage capabilities that were previously only found in computers. Cellular telephones, personal digital assistant (PDA) devices and "smart phones" are becoming more complex with each innovation and provide features and capabilities that were previously only found in computers. Most of these devices now provided Internet web browsers, instant messaging capabilities, chat programs, voice mail, e-mail access capabilities, and mapping capabilities. These devices are capable of storing address books and calendars containing a person's personal and business contacts. They can also store audio and video clips, call histories, call logs, photographs, text and recorded messages/voice mail sent and received and subscriber information. Many of these devices contain high resolution still and video cameras, and include Global Positioning System (GPS) functions that record data about the phone's locations including tracks, ways points and even the coordinates where photographs were taken.

20. Searching digital evidence systems like the SUBJECT DEVICE for criminal evidence requires experience in the computer and cellular telephone field and a properly controlled environment in order to protect the integrity of the evidence and recover even "hidden," erased, compressed, password-protected, or encrypted files. Since digital evidence is extremely vulnerable to tampering or destruction (both from external sources and from destructive code imbedded in the system as a "booby trap"), a controlled environment is essential to its complete and accurate analysis.

21. As further described in Attachment B, this warrant seeks permission to locate in the SUBJECT DEVICE not only computer files that might serve as direct evidence of the crimes described in this affidavit, but also for evidence that establishes how the SUBJECT

Page **6** of **11**

AUG 3 1 2018

Case 3:18-mj-00458-DMS   Document 1-1   Filed 08/31/18   Page 6 of 11

DEVICE was used, the purpose of its use, and who used it. Further, as described above and in Attachment B, this application seeks permission to search and seize records that might be found in the SUBJECT DEVICE, in whatever form they are found. One form in which the records might be found is that they are stored on a computer's hard drive, or other electronic media. Some of these electronic records might take the form of files, documents, and other data that is user-generated. Some of these electronic records, as explained below, might take a form that becomes meaningful only upon forensic analysis of the SUBJECT DEVICE.

22. Law enforcement personnel trained in searching and seizing computer data will seize items of evidentiary value, and transport the same to an appropriate law enforcement laboratory for off-site review. The electronic media will be reviewed for the evidence described in Attachment B, pursuant to the filter team agent protocol described above.

23. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been on electronic devices like the SUBJECT DEVICE. Electronic files downloaded to a hard drive can be stored for years at little or no cost. Even when such files have been deleted, they can be recovered months or years later using readily available forensics tools. When a person "deletes" a file, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space - that is, in space on the hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space - for long periods of time before they are overwritten. The search for these files and file fragments can take considerable time, depending on the computer user's practices.

## SPECIFIC METHODS OF SEARCHING FOR DIGITAL EVIDENCE

*Seizure of Digital Evidence*

24. I am seeking authority to search for, among other things, items containing digital data, more particularly described in Attachment B. Consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.



AUG 3 1 2018

25. The search of electronic devices like the SUBJECT DEVICE can be a time-consuming manual process often requiring months of work. This is so for a number of reasons, including the complexity of these phones, the multiple devices upon which computing can take place, and the tremendous storage capacity of modern day smart and cell phones, and the use of encryption or wiping software. Modern day cell phones like the SUBJECT DEVICE hold sizeable quantities of data. I know from my training and experience, and from my discussions with a trained digital media collection specialist, that a review of such quantities of evidence can take a significant amount of time. Second, there is a limited pool of personnel capable of conducting an examination. Third, in some instances an individual may utilize encryption software or other publically available techniques such as wiping software to hide evidence. Forensic tools are available to circumvent some of these techniques; however, these tools may require a significant allocation of resources and a substantial period of time.

26. With rare exception, the above-listed search techniques will not be performed on original digital evidence. Instead, I know that the first priority of a digital evidence forensic examination is the preservation of all data seized. As such, tools will be utilized to examine the SUBJECT DEVICE that will preserve the original evidence in the best possible format.

27. Criminal Procedure Rule 41 specifically states, "The officer may retain a copy of the electronically stored information that was seized or copied." Fed. R. Crim. P. 41 (f)(1)(B). Moreover, upon identification of contraband, the item is subject to forfeiture, and the owner has a reduced expectation of privacy in those seized devices. Consequently, should a seized device be found during the authorized forensic review to be an instrumentality, or contain evidence of a crime, it will be retained by the United States, and may be searched without further authorization of the Court for the evidence described in Attachment B. Such a later search may be required for the following reasons:

- Should the execution of the warrant uncover data that may later need to be introduced into evidence during a trial or other proceeding, the authenticity and the integrity of the evidence and the government's forensic methodology may be contested issues. Retaining copies of seized storage media may be required to prove these facts.

- Returning the original storage medium to its owner will not allow for the preservation of that evidence. Even routine use may forever change the data it contains, alter system access times, or eliminate data stored on it.

- Because the investigation is not yet complete, it is not possible to predict all possible defendants against whom evidence found on the storage medium might be used. That evidence might be used against persons who have no possessory interest in the storage

media, or against persons yet unknown. Those defendants might be entitled to a copy of the complete storage media in discovery. Retention of a complete image assures that it will be available to all parties, including those known now and those later identified.

- The act of destroying or returning storage medium could create an opportunity for a defendant to claim, falsely, that the destroyed or returned storage medium contained evidence favorable to him. Maintaining a copy of the storage medium would permit the government, through an additional warrant if necessary, to investigate such a claim.

- Similarly, should a defendant suggest an explanation for the presence of evidence on storage medium or some defense, it may be necessary to investigate such an explanation or defense by, among other things, re-examining the storage medium with that explanation or defense in mind. This may require an additional examination of the storage medium for evidence that is described in Attachment B but was not properly identified and segregated previously.

28. In the event that the SUJBECT DEVICE is found not to be (a) an instrumentality of the offense, (b) a fruit of the criminal activity, (c) contraband, or (d) evidence of the offenses specified herein, it will be returned as quickly as possible.

## UNLOCKING THE SUBJECT DEVICE

29. As described in Attachment A, the Subject Device is an Apple brand device, specifically Apple iPhone 8 Plus cellular telephone. I know from my training and experience, as well as from information found in publicly available materials including those published by Apple, that some models of Apple devices such as iPhones and iPads offer their users the ability to unlock the device via the use of a fingerprint or thumbprint (collectively, "fingerprint") in lieu of a numeric or alphanumeric passcode or password. This feature is called Touch ID.

30. If a user enables Touch ID on a given Apple device, he or she can register up to 5 fingerprints that can be used to unlock that device. The user can then use any of the registered fingerprints to unlock the device by pressing the relevant finger(s) to the device's Touch ID sensor, which is found in the round button (often referred to as the "home" button) found at the bottom center of the front of the device. In my training and experience, users of Apple devices that offer Touch ID often enable it because it is considered to be a more convenient way to unlock the device than by entering a numeric or alphanumeric passcode or password, as well as a more secure way to protect the device's contents. This is particularly true when the user(s) of the device are engaged in

AUG 3 1 2018

Case 3:18-mj-00458-DMS Document 1-1 Filed 08/31/18 Page 9 of 11

criminal activities and thus have a heightened concern about securing the contents of the device.

31. In some circumstances, a fingerprint cannot be used to unlock a device that has Touch ID enabled, and a passcode or password must be used instead. These circumstances may include: (1) when more than 48 hours has passed since the last time the device was unlocked and (2) when the device has not been unlocked via Touch ID in 8 hours and/or the passcode or password has not been entered in the last 6 days. Thus, in the event law enforcement encounters a locked Apple device, the opportunity to unlock the device via Touch ID may exist only for a short time. Touch ID also may not work to unlock the device if (1) the device has been turned off or restarted; (2) the device has received a remote lock command; and/or (3) five unsuccessful attempts to unlock the device via Touch ID are made.

32. Based on the facts listed above the passcode or password that would unlock the SUBJECT DEVICE may not be known to law enforcement. Thus, it will likely be necessary to press the finger(s) of the user(s) of the SUBJECT DEVICE to the device's Touch ID sensor in an attempt to unlock the device for the purpose of executing the search authorized by this warrant. Attempting to unlock the relevant Apple device(s) via Touch ID with the use of the fingerprints of the user(s) is necessary because the government may not otherwise be able to access the data contained on those devices for the purpose of executing the search authorized by this warrant.

33. Based on the facts listed above and my training and experience, it is likely that Cristabel MEJIA-ZAYAS is a user of SUBJECT DEVICE and thus that their fingerprints are among those that may be able to unlock the device via Touch ID.

34. Although I do not know which of a given user's 10 fingerprints is capable of unlocking a particular device, based on my training and experience I know that it is common for a user to unlock a Touch ID-enabled Apple device via the fingerprints on thumbs or index fingers. In the event that law enforcement is unable to unlock the SUBJECT DEVICE as described above within the five attempts permitted by Touch ID, this will simply result in the device requiring the entry of a password or passcode before it can be unlocked.

35. Due to the foregoing, I request that the Court authorize law enforcement to press the fingers (including thumbs) of Cristabel MEJIA-ZAYAS.

## CONCLUSION

36. Based on the above, your Affiant respectfully submits that there is probable cause to

AUG 3 1 2018

believe the SUBJECT DEVICE contains evidence, instrumentalities, and fruits of violations of Title 21 U.S.C. § 841(a)(1), (b)(1)(B).

37. The information in this affidavit is based on my personal knowledge, as well as information provided to me by other law enforcement officers, and individuals directly involved in the investigation of this case. The information in this affidavit is provided for the limited purpose of establishing probable cause and is not a complete statement of all the facts related to this case. This affidavit is made with the information made available and reviewed by me to date, however the investigation is still ongoing.

**Signature Redacted**

BRIAN ARNOLD
SPECIAL AGENT
BUREAU OF ALCOHOL, TOBACCO,
FIREARMS and EXPLOSIVES (ATF)

Sworn and subscribed before me in Anchorage, Alaska
this 31 day of August 2018.

/S/ DEBORAH M. SMITH
CHIEF U.S. MAGISTRATE JUDGE
SIGNATURE REDACTED

UNITED STATES DISTRICT COURT MAGISTRATE JUDGE
DISTRICT OF ALASKA

Page 11 of 11

Case 3:18-mj-00458-DMS   Document 1-1   Filed 08/31/18   Page 11 of 11

AUG 3 1 2018